1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JAMES FLYNN,                          No. 2:14-CV-0909-CMK-P

12              Petitioner,

13        vs.                              <u>MEMORANDUM OPINION AND ORDER</u>

14   DANIEL PARAMO,

15              Respondent.

16   _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to the written consent of all parties, this

19   case is before the undersigned as the presiding judge for all purposes, including entry of final

20   judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending before the court are petitioner's amended petition

21   for a writ of habeas corpus (Doc. 18), respondent's answer (Doc. 27), and petitioner's reply (Doc.

22   31).

23   / / /

24   / / /

25   / / /

26   / / /

                                     1

# I. BACKGROUND

## A.   Facts[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Defendant, who was like a grandfather to victim F., was found guilty of molesting him nine times over a three-year period.  Defendant appeals from the resulting 24-year prison sentence, raising a number of evidentiary contentions.  Finding the contentions forfeited or lack merit, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### *The Prosecution*

> F.'s mother began dating defendant's stepson when F. was about six or seven years old.  The stepson lived with defendant on a ranch in Galt, and F. spent a lot of time visiting.  Much of the time, F. would watch television in defendant's room with him.  Defendant also would take F. shopping and bought F. "everything [he] wanted."  Soon, they began showering naked together almost every Sunday before church.  They also began sleeping together in defendant's bed with the door locked.

> The molestation started when defendant told F. that F. "was getting older and that eventually [he] would have to learn how to . . . please a woman." Defendant said he "was going to show [him] what to do."  Defendant and F. got naked, and defendant had F. orally copulate him.  F. did not think there was anything wrong because he thought defendant was "teaching [him] what he said he was teaching [him]."  On many other occasions, F. would have to stroke defendant's penis as well.  One time, defendant tried to put his penis in F.'s "butt," but F. told him "no," and defendant stopped. Defendant told F. not to tell anybody about the molests or else F. "would get in trouble."  Defendant stopped molesting F. when he was about 10 or 11.

> After F.'s mom and defendant's stepson broke up, defendant continued his presence in the lives of F., his mother, and his sister.  Defendant continued taking F. to church and gave him a gold cross and chain for his first holy communion.  He gave F. and F.'s sister a computer and laptop computer. He bought F. school clothes and sneakers.  He enrolled F. in soccer and

---

[1]    Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

paid for his fees and equipment and attended all his practices and games. He took F. to Rome to see the pope when F. was 12 years old.

At some point, defendant's visits diminished. Defendant canceled a cell phone contract for F., which accompanied the cell phone defendant had also bought him. F. became concerned that defendant's visits were diminishing and he wondered why.

When F. was about 13, he realized what defendant had done was wrong. When F. was 15, he told his girlfriend he had been molested. A few days later, he told him mom and his sister. After telling his family, F. tried to commit suicide by hanging himself by a cord in the garage. His best friend was in the house, and the friend stopped F. He tried to commit suicide because he "just couldn't handle everything that had happened to [him] and what was going on," namely, what defendant had done to him. What put him "over the edge" was also getting in trouble at school and getting into arguments with his mom and sister.

After the suicide attempt, F. made a pretext phone call to defendant. F. started by telling defendant he could not forget what defendant had done to him. Defendant responded, "Well, we – we – we really didn't do nothing but remember – if you remember I told you I didn't – I don't love you in that way. You know, that's why I – we – you know, I had to tell you stop all that stuff. You know?" He said "it wasn't a sexual relationship." Defendant apologized and said he should not have had F. in the shower with him, but there "wasn't the intent." They also "just laid around . . . in the nude but . . . we really didn't do nothing. And if – and – and I didn't – never did love you in that way. It wasn't pursued." Defendant said he didn't want to go to jail or prison. When F. asked about the "blow jobs," defendant responded, "On, no, no, no. I didn't do nothing. I – I swear. Nothing happened." He admitted what he did was "wrong" but said only that they laid around naked after showering to cool down.

## B

### The Defense

Defendant testified. He did not spend much time with F. at the ranch and most of the time they were not alone. They got closer toward the end of his stepson's relationship with F.'s mother, eventually becoming like grandfather and grandson. Despite their growing closeness, F. did not spend much time in defendant's bedroom because defendant was always watching religious programs. Defendant never slept naked, and he did not do so with F. Twice, F. wandered into the shower when defendant was inside. Both times, defendant scolded him to get out. As to his statements on the pretext call, they were not as they appeared. When he admitted he was lying naked with F., his definition of naked was not wearing a shirt. He apologized to F. during the phone call because F. was looking for an apology.

///

In addition to his own testimony, defendant presented the testimony of two character witnesses. ReCinda Greenwood knew defendant because her niece married his stepson. She had seen defendant interact with children on hundreds of occasions, and not once had she seen him act inappropriately. There was no fact that she could learn about defendant that would change her opinions. Suzanna Schuyler was a coworker of defendant's. She believed that he would never harm a child and that the charges he was facing were out of character for him. If she learned that he admitted to showering with a six-year-old boy and lying naked with him, those facts would change her opinion.

## B.   <u>Procedural History</u>

Petitioner's conviction and sentence were affirmed by the California Court of Appeal and the California Supreme Court denied direct review on May 22, 2013. On November 5, 2014, this court granted respondent's motion to dismiss and granted petitioner leave to file an amended petition containing only exhausted claims. Petitioner filed a first amended petition on December 1, 2014.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Calderon v. United States Dist. Ct. (Beeler)</u>, 128 F.3d 1283, 1287 (9th Cir. 1997), <u>cert.</u> <u>denied</u>, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has <u>not</u> reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. <u>See</u> <u>Pirtle v. Morgan</u>, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); <u>see also</u> <u>Killian v. Poole</u>, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the

evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

petition de novo where state court had issued a ruling on the merits of a related claim, but not the

claim alleged by petitioner).  When the state court does not reach the merits of a claim,

"concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

not available for any claim decided on the merits in state court proceedings unless the state

court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

"contrary to" or represents an "unreasonable application of" clearly established law.  Under both

standards, "clearly established law" means those holdings of the United States Supreme Court as

of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

(citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

created by state conduct at trial because the Court had never applied the test to spectators'

conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

1  holdings.  See Carey, 549 U.S. at 74.

2         In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

3  majority of the Court), the United States Supreme Court explained these different standards.  A

4  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

5  the Supreme Court on the same question of law, or if the state court decides the case differently

6  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

7  court decision is also "contrary to" established law if it applies a rule which contradicts the

8  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

9  that Supreme Court precedent requires a contrary outcome because the state court applied the

10  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

11  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

12  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

13  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

14  1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

15  case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

16  is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

17         State court decisions are reviewed under the far more deferential "unreasonable

18  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

19  unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

20  510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

21  that federal habeas relief may be available under this standard where the state court either

22  unreasonably extends a legal principle to a new context where it should not apply, or

23  unreasonably refuses to extend that principle to a new context where it should apply.  See

24  Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

25  decision is not an "unreasonable application of" controlling law simply because it is an erroneous

26  or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.  The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

Petitioner claims: (1) California Penal Code § 288 is constitutionally vague; (2) trial counsel was ineffective; (3) the amended information provided insufficient notice; (4) the trial court misinstructed the jury; (5) the trial court erred regarding evidence of the victim's suicide attempt; (6) the trial court erred by excluding evidence impeaching the victim; (7) the trial court erred by allowing evidence of Child Sexual Abuse Accommodation Syndrome; (8) the prosecution failed to prove the facts alleged in the amended information; (9) petitioner's classification as a violent sex offender is not supported by the evidence; (10) California's inadequate post-conviction system is unconstitutional; and (11) AEDPA is unconstitutional.

/ / /

## A.    Procedurally Barred Claims

Petitioner was convicted of child molestation in violation of California Penal Code § 288.  Petitioner argues that § 288 is unconstitutionally vague.  Petitioner also claims that the trial court erred by excluding impeachment evidence from the victim's juvenile record, and that the trial court erred by allowing evidence relating to Child Sexual Abuse Accommodation Syndrome.  Petitioner raised these claims for the first time in a habeas petition to the state court, which denied the claims as procedurally defaulted under In re Dixon, 41 Cal. 2d 756, 759 (1954), because they could have been raised on direct appeal.  Respondent argues that the state court procedural default bars federal habeas review of these claims.

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief relies on a state law ground that is independent of federal law and adequate to support the judgment.  See Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989).  However, a discretionary state rule is not adequate to bar federal habeas corpus review.  See Siripongs v. Calderon, 35 F.3d 1308 (9th Cir. 1994).  Generally, the only state law grounds meeting these requirements are state procedural rules.  Even if there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner can demonstrate:  (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice.  See Harris, 489 U.S. at 262 (citing Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).  In cases where the state court denies a claim based on a procedural default but also discusses the merits of the claim, the claim is nonetheless procedurally barred on federal habeas review unless the state court's decision fairly appears to rest primarily upon federal law.  See Coleman, 501 U.S. at 737.

/ / /

/ / /

/ / /

A state law is independent if it is not interwoven with federal law.  See Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).  The independence of a state law is measured at the time the default is imposed by the state court to bar a claim.  See Bennett v. Mueller, 322 F.3d 573, 582 (9th Cir. 2003); see also La Crosse v. Kernan, 244 F.3d 702, 204 (9th Cir. 2001); Park v. California, 202 F.3d 1146 (9th Cir. 2000) (assessing whether California's waiver default was independent when the California Supreme Court denied the claim).  A state law is adequate if it is clear, well-established, and consistently applied.  See Bargas v. Burns, 179 F.3d 1207, 1211 (9th Cir. 1999).  The adequacy of a state default is measured at the time of the petitioner's purported default.  See Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997).  Thus, the respective dates for determining the adequacy and independence may not be the same.

The government bears the ultimate burden of establishing adequacy.  See Bennett, 322 F.3d at 581.  However, because the petitioner bears the initial burden of putting a procedural bar affirmative defense in issue in the case (by asserting specific factual allegations as to inadequacy, for example), the scope of the state's burden of proof is measured by the specific assertions put forth by petitioner.  See id. at 586.  The petitioner's burden is de minimus.  See King v. Lamarque, 464 F.3d 963, 967 (9th Cir. 2006); see also See Webb v. Kernan, 2008 WL 564965 (E.D. Cal. 2008).

Under California law, a convicted defendant desiring to bring claims in a state habeas petition must, if possible, have pursued the claims on direct appeal.  See Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000) (citing In re Dixon, 41 Cal.2d 756 (1953)).  The so-called Dixon rule requiring that claims be raised on direct appeal is discretionary in that it admits of the possibility of exceptions for "special circumstances constituting an excuse" for failure to raise a claim by way of direct appeal and when such circumstances are found, the California Supreme Court may entertain the claim.  see Park, 202 F.3d at 1152 (citing Fields v. Calderon, 125 F.3d 757, 763(9th Cir. 1997)); see also Karis v. Vasquez, 828 F. Supp. 1449, 1462-63 (1993).  One of the exceptions to the Dixon rule is for fundamental constitutional error.

See Park, 202 F.3d at 1152 (citing In re Harris, 5 Cal. 4th 813 (1993)). Before the California Supreme Court decided In re Robbins, 18 Cal.4th 770 (1998), attempting to disentangle certain of California's procedural rules from federal constitutional concepts, the applicability of this exception depended, at least in part, on federal constitutional principles. See Park, 202 F.3d at 1152. Therefore, Dixon defaults imposed before 1998 are not independent of federal law and cannot bar federal habeas review. See id. at 1153. As to adequacy, the Ninth Circuit has held that the Dixon default was not firmly established and consistently applied prior to the California Supreme Court's decision in In re Clark, 5 Cal. 4th 750, 768 (1993). See Fields, 125 F.3d at 765; see also Lee v. Jacquez, 788 F.3d 1124, 1129-34 (9th Cir. 2015) (concluding Dixon default inadequate "around the time" of default in June 1999).

In this case, the state court applied the Dixon procedural default in July 2013. At this time, Dixon defaults were adequate and independent. In his lengthy traverse, petitioner offers no explanation establishing cause for his failure to raise these claims on direct appeal. Therefore, the court agrees with respondent that petitioner's claim that § 288 is unconstitutional, as well as his claims that the trial court erred by excluding impeachment evidence from the victim's juvenile record, and that the trial court erred by allowing evidence relating to Child Sexual Abuse Accommodation Syndrome, are all procedurally barred.

**B.     Adequacy of the Amended Information**

Petitioner claims that the amended information filed on the eve of trial failed to provide adequate notice. The California Supreme Court denied this claim without discussion.

As respondent notes, clearly established federal law requires that defendants be informed of the charges against him, see De Jonge v. Oregon, 299 U.S. 353 (1937), and that the charging document state the elements of the charged offenses with sufficient clarity, see Givens v. Housewright, 786 F.2d 1378 (9th Cir. 1986). Petitioner has cited no Supreme Court authority prohibiting amendment of the charging document on the eve of trial. A review of the record in this case reflects that the amended information challenged by petitioner contains a summary of

1  the elements of each charged offense and a clear recitation of the facts alleged by the government

2  under each charge.  Given that the amended information provided sufficient notice, the court

3  cannot say that the state court's denial of this claim is either contrary to or the result of an

4  unreasonable application of federal law.

5      **C.**    **Trial Court Error Claims**

6          Petitioner claims that the trial court committed a number of errors with respect to

7  the evidence.  Specifically, petitioner argues that the trial court erroneously excluded school

8  records offered to impeach testimony regarding the victim's suicide attempt.[2]  Petitioner also

9  claims that the trial court erred by allowing the prosecution's investigator as well as a victim

10 advocate to be present in the courtroom during testimony.  Finally, petitioner argues that the trial

11 court misinstructed the jury regarding a minor's ability to consent to sexual acts.

12      1.    Exclusion of School Records

13          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a

14 transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,

15 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not

16 available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at

17 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786

18 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.

19 See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

20          However, a "claim of error based upon a right not specifically guaranteed by the

21 Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

22 infects the entire trial that the resulting conviction violates the defendant's right to due process."

23 Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

24 _____

25      [2]    Petitioner also claims that the trial court erred by excluding evidence of the
    victim's juvenile record and that the trial court erred by allowing evidence relating to Child
    Sexual Abuse Accommodation Syndrome.  As discussed above, those claims are procedurally
26 barred due the state court's application of the Dixon default.

Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994). To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960). In any event, an evidentiary error is considered harmless if it did not have a substantial and injurious effect in determining the jury's verdict. See Padilla v. Terhune, 309 F.3d 614, 621 (9th Cir. 2002); see also Laboa v. Calderon, 224 F.3d 972, 976 (9th Cir. 2001).

Petitioner claims that the trial court's denial of his use of the victim's school records to impeach the victim's testimony regarding a suicide attempt was unfair. According to petitioner:

> The trial court condones the People's failure to produce the complainant's school records and other events surrounding his alleged suicide attempt after allowing this suicide attempt into evidence during the state's case in chief, not allowing Petitioner to show his bias toward the People, contained in these records from his unlawful conduct and for impeachment as to why he made his allege suicide attempt other than his testimony provided at trial.
>
> * * *
>
> To show the totally irrelevant evidence of this witness' attempted suicide was designed to generate feelings of sympathy for the alleged victim and outrage toward Petitioner for reasons not relevant to the specific charges being made, the People refused to produce the school reports of misconduct by complainant to defense counsel to show further bias to the People and the real reasons he attempted to commit suicide.

/ / /

/ / /

The California Court of Appeal addressed this contention on direct appeal as follows:

> Defendant sought F.'s confidential school records to assist in his defense. The court reviewed those record in camera, found nothing discoverable, sealed those records, and then placed them in the court file. Defendant now requests that we review the sealed records, which we do to determine whether the trial court abused its discretion by ruling that the record produced no discoverable material. (Citation omitted).
>
> Defendant further "suggests that these record be made available to each party to read at the Court of Appeal under a protective order that if any argument is to be made from them, that they be made under seal until the court orders differently." We decline defendant's suggestion. Given the privacy concerns of a minor such as F. in his school records, the procedure set forth in *People v Mooc* (2001) 26 Cal.4th 1216, 1232 (where we review the confidential records to determine whether the trial court abused its discretion in finding no discoverable evidence) strikes the necessary balance between a defendant's right to meaningful appellate review and the minor's right to privacy. . . .
>
> We have reviewed F.'s school records and conclude they contain no discoverable material. There was no abuse of discretion.

This court must accept the state court's factual finding that the victim's school records contained no relevant material. See 28 U.S.C. § 2254(e)(1). Because the victim's school records were not relevant, denying petitioner access to those records did not render his trial unfair. The state court's denial of this claim is, therefore, neither contrary to nor the result of an unreasonable application of federal law.

## 2. Presence of Investigator and Victim Advocate

Petitioner states:

> The state court allowed the primary investigating police detective Wanner to sit with the prosecutor and victim advocates from the same office to sit with the alleged victim while in the courtroom during trial so they could adjust their testimony accordingly when called to testify.

As respondent notes, California law allows for the presence of an investigating officer and victim advocate. See California Evid. Code § 777(s) and California Penal Code § 868.5(a). Petitioner has not shown how the presence of these individuals resulted in an unfair trial. Therefore, the court finds that the state court's denial of this claim is neither contrary to nor the result of an

13

1    unreasonable application of federal law.

2          3.    Jury Instruction Regarding Consent

3          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a

4    transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,

5    1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not

6    available for alleged error in the interpretation or application of state law.  See Middleton, 768

7    F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v.

8    Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state

9    issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Thus, a challenge to jury

10   instructions does not generally give rise to a federal constitutional claim.  See Middleton, 768

11   F.2d at 1085) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

12         However, a "claim of error based upon a right not specifically guaranteed by the

13   Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

14   infects the entire trial that the resulting conviction violates the defendant's right to due process."

15   Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

16   Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a

17   claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete

18   miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396

19   F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

20         In general, to warrant federal habeas relief, a challenged jury instruction "cannot

21   be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

22   process right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317

23   (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner

24   must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting

25   conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp,

26   414 U.S. at 147).  In making its determination, this court must evaluate an allegedly ambiguous

                                        14

jury instruction "'in the context of the overall charge to the jury as a component of the entire trial process.'"  Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).  Petitioner's burden is "especially heavy" when the court fails to give an instruction.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  Where an instruction is missing a necessary element completely, the "reasonable likelihood" standard does not apply and the court may not ". . . assume that the jurors inferred the missing element from their general experience or from other instructions. . . ."  See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994).  In the case of an instruction which omits a necessary element, constitutional error has occurred.  See id.

It is well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt.  See In re Winship, 397 U.S. 358, 364 (1970).  Therefore, due process is violated by jury instructions which use mandatory presumptions to relieve the prosecution's burden of proof on any element of the crime charged. See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979).  A mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain predicate facts are proved.  See Francis, 471 U.S. at 314.  On the other hand, a permissive presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of a basic fact.  See County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979).  The ultimate test of the constitutionality of any presumption remains constant –  the instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced by the government, to find the ultimate facts beyond a reasonable doubt.  See id. at 156 (citing In re Winship, 397 U.S. at 364).

/ / /

/ / /

15

1     Petitioner argues:

2          The state court allowed instruction of the jury with a conclusive
      and irrebuttable presumption that the aggressive minor or child could not
3     consent to and therefore could not intend to commit any sexual acts
      because he was too young to commit the acts alleged (that he openly
4     admitted he committed) when it was indisputable at trial that Petitioner did
      not <u>touch</u> the child sexually. . .; <u>see</u> CALCRIM 1110, "It is not a defense
5     that the child may have consented to the act". . . .

6     The court finds no basis for federal habeas relief on this claim. As the state court noted, consent

7     of a minor victim is not a defense in a child molestation case in California because minors cannot

8     legally consent. Nothing in the instruction given by the trial court regarding consent altered the

9     elements under California Penal Code § 288 or relieved the prosecution of the burden of proof on

10    those elements. The state court's denial of this claim, therefore, is neither contrary no nor the

11    result of an unreasonable application of the law.

12         **D.      <u>Ineffective Assistance of Counsel Claims</u>**

13         The Sixth Amendment guarantees the effective assistance of counsel. The United

14    States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

15    <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). First, a petitioner must show that, considering

16    all the circumstances, counsel's performance fell below an objective standard of reasonableness.

17    <u>See</u> <u>id.</u> at 688. To this end, petitioner must identify the acts or omissions that are alleged not to

18    have been the result of reasonable professional judgment. <u>See</u> <u>id.</u> at 690. The federal court must

19    then determine whether, in light of all the circumstances, the identified acts or omissions were

20    outside the wide range of professional competent assistance. <u>See</u> <u>id.</u> In making this

21    determination, however, there is a strong presumption "that counsel's conduct was within the

22    wide range of reasonable assistance, and that he exercised acceptable professional judgment in all

23    significant decisions made." <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing

24    <u>Strickland</u>, 466 U.S. at 689).

25    / / /

26    / / /

1       Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S.

2 at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

3 unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

4 reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

5 see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

6 determine whether counsel's performance was deficient before examining the prejudice suffered

7 by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

8 ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

9 followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

10 697).

11       Petitioner contends that his trial counsel was ineffective for the following reasons:

12 (1) counsel failed to challenge the constitutionality of California Penal Code § 288; (2) counsel

13 failed to object to a jury instruction that the minor victim cannot give consent; (3) counsel failed

14 to introduce evidence of the victim's school records and other evidence relevant to his suicide

15 attempt; (4) counsel failed to object to the prosecution's introduction of evidence of non-specific

16 generic sexual acts; (5) counsel failed to object to evidence of the pretext call made by the victim;

17 (6) counsel failed to object to the presence of the prosecution's primary investigator as well as a

18 victim advocate during trial; (7) counsel failed to object to the determination that petitioner is a

19 violent sex offender; (8) counsel failed to object to the amended information; and (9) counsel

20 failed to object to the presence of a victim support person.

21       The Superior Court addressed six of these claims in a reasoned decision as follows:

22       Petitioner claims that trial counsel was ineffective for failing to
argue that the statute under which he was convicted was constitutionally

23 deficient.  However, he has not provided any case law to support that claim.
To the contrary, Penal Code section 288(a) has withstood constitutional

24 claims of vagueness.  (See People v. Loignon (1958) 160 Cal.App.2d 412,
419-19).

25

26 / / /

Similarly, Petitioner suggests that trial [counsel] should have objected to the jury instructions to the extent that they did not require "actual" intent to arouse and stated that consent of the minor is not a defense. First, the record shows that the instruction *did* state that intent to arouse was required. (See CALCRIM No. 1110, ¶ 2). Although the jury was instructed that actual arousal was not required, that is the law. (See People v. McCurdy (1923) 60 Cal.App. 499, 502). Second, consent is not a defense. (See People v. Cardenas (1994) 21 Cal.App.4th 927, 937, fn. 7). Petitioner's reference to In re Randy S. (1999) 76 Cal.App.4th 400 is inapt as that case addressed a minor forming the necessary intent to arouse, not the minor's ability to legally consent.

\* \* \*

Next, Petitioner argues that counsel should have objected to the prosecutor's use of evidence of generic sexual acts to prove guilt. A conviction in a child molestation case may be based on generic evidence so long as the victim describes: (1) the kind of acts committed with sufficient specificity to assure that unlawful conduct occurred and differentiate between the types of illegal conduct; (2) the number of acts sufficient to support each count; and (3) the general time period when the acts occurred to assure that they were committed within the applicable limitations period. (People v. Jones (1990) 51 Cal.3d 294, 316). As Petitioner has not shown that the evidence was insufficient, despite being of a generic type, he has not shown that counsel should have objected to the evidence.

Petitioner also argues that counsel should have objected to admission of the "pretext" phone call between Petitioner and the victim on the grounds that the call was illegally obtained in violation of Penal Code section 632. However, evidence cannot be suppressed unless it violates the United States Constitution. (See In re Lance W. (1985) 37 Cal.3d 873, 890). A violation of the Penal Code does not warrant suppression of the evidence.

In addition, Petitioner complains that Detective Wanner was allowed to be present during the testimony of other witnesses. However, if Wanner was designated the investigative officer, his presence was permitted. (See People v. Gonzalez (2006) 38 Cal.4th 932, 950-51).

Finally, Petitioner claims that he was improperly found to be a violent sex offender. However, there is no indication that Petitioner was found to be a violent sex offender. Therefore, he has failed to show that trial counsel was ineffective as to these claims.

The Superior Court did not expressly address petitioner's claims that: (1) counsel failed to introduce evidence of the victim's school records and other evidence relevant to his suicide attempt; (2) counsel failed to object to the amended information; and (3) counsel failed to object to the presence of a victim support person. Because there is no reasoned state court decision as to

18

these claims, the California Supreme Court's silent denial of these claims on October 29, 2014, constitutes the relevant state court adjudication.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

### 1. Failure to Challenge Constitutionality of § 288

Petitioner claims his trial counsel was ineffective for failing to raise a constitutional challenge to California Penal Code § 288.As the state court observed, California Penal Code § 288 has been found to be constitutional.  See People v. Loignon, 160 Cal.App.2d 412 (1958).  Because counsel was not deficient for failing to raise a frivolous argument, the state court's determination is neither contrary to nor the result of an unreasonable application of clearly established federal law.

### 2. Failure to Object to Jury Instruction Regarding Consent

Petitioner claims his trial counsel was ineffective for failing to challenge a jury instructions which told the jury that consent of the minor is not a defense in a child molestation case.  As the state court observed, the trial court correctly instructed the jury pursuant to California law.  See People v. Cardenas, 21 Cal.App.4th 927 (1994).  Because counsel was not deficient for failing to raise a frivolous objection, the state court's denial of this claim is neither contrary to nor the result of an unreasonable application of federal law.

### 3. Failure to Introduce Evidence to Rebut Suicide Testimony

Petitioner claims that his trial counsel was ineffective for failing to argue for introduction of the victim's school records and evidence of "other events" to impeach the victim's testimony about a suicide attempt.  At the outset, the court notes that petitioner has not outlined the content of the school records or evidence of "other events."  It is therefore impossible to assess whether such evidence would have been relevant or tended to impeach the victim's testimony regarding attempting suicide.  In any event, as discussed above, both the trial court and appellate court reviewed the victim's school records and determined that they contained no relevant information.  For this reason, the state court's denial of this claim is neither contrary to nor the

result of an unreasonable application of federal law regarding ineffective assistance of counsel.

### 4. Failure to Object to Evidence of Generic Sex Acts

Petitioner claims that his trial counsel was ineffective for failing to raise objections to the prosecution's use of evidence of generic sexual acts to prove the charged offenses. Because the use of such evidence is permitted under California law, see People v Jones, 51 Cal.3d 294 (1990), counsel was not deficient in failing to raise frivolous objections. The state court's denial of this claim, therefor, is neither contrary to nor the result of an unreasonable application of clearly established law.

### 5. Failure to Object to Evidence of Victim's Phone Call

Petitioner claims that his trial counsel was ineffective for failing to object to evidence of a phone call made by the victim, evidence which petitioner argues was obtained in violation of California Penal Code § 632.[3] Assuming that the phone call evidence was obtained in violation of § 632, counsel was not deficient for failing to object because, as the state court observed, the only basis for excluding evidence in a California criminal case is violation of the U.S. Constitution. See In re Lance W., 37 Cal.3d 873. For this reason, the state court's denial of this claim is neither contrary to nor the result of an unreasonable application of federal law.

### 6. Failure to Object to Presence of Investigator

As indicated above, the presence of an investigating officer is allowed under California Evidence Code § 777(c). For this reason, counsel was not deficient for failing to raise a frivolous objection. The state court's denial of this claim is neither contrary to nor the result of an unreasonable application of federal law.

/ / /

/ / /

---

[3] California Penal Code § 632 makes it a crime to record a telephone conversation without the parties' consent and provides that the recordings obtained in such a manner may not be used as evidence in any court proceeding.

7. Failure to object to Violent Sex Offender Determination

Petitioner argues that his trial counsel was ineffective for failing to object to the determination that he is a violent sexual offender. Because the record does not reflect that any such determination was made in this case, the state court's denial of this claim is neither contrary to nor the result of an unreasonable application of federal law.

8. Failure to Object to Amended Information

Petitioner claims that his trial counsel was ineffective for failing to object to the amended information. As discussed above, clearly established federal law requires that defendants be advised of the charges against them, see De Jonge, 299 U.S. 353, and that the charging document state the elements of the charged offenses with sufficient clarity, see Givens, 786 F.2d 1378. In this case, petitioner has presented no evidence to indicate that the amended information failed to satisfy these requirements. Because counsel was not deficient for failing to raise a frivolous objection, the state court's denial of this claim is neither contrary to nor the result of an unreasonable application of federal law.

9. Failure to Object to Presence of Victim Advocate

As with petitioner's claim regarding the presence of the investigating officer, California law permits the presence of a victim advocate. See California Penal Code § 868.5(a). Therefore, counsel was not deficient for failing to raise an objection to the presence of a victim advocate and, for this reason, the state court's denial of this claim is neither contrary to nor the result of an unreasonable application of federal law.

**E.     Sufficiency of the Evidence**

Petitioner claims that the evidence was insufficient to prove various allegations of the amended information. Specifically, petitioner contends the evidence was insufficient to establish: (1) that the charged offenses took place when the victim was between the ages of six and eight; and (2) that the charged offenses occurred between December 29, 1999, and December 30, 2002. Petitioner also claims that his classification as a violent sex offender is not supported

1 by the evidence.

2 When a challenge is brought alleging insufficient evidence, federal habeas corpus

3 relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the

4 light most favorable to the prosecution, no rational trier of fact could have found proof of guilt

5 beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[4]  Under Jackson,

6 the court must review the entire record when the sufficiency of the evidence is challenged on

7 habeas.  See id.  It is the province of the jury to "resolve conflicts in the testimony, to weigh the

8 evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  "The question

9 is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational

10 jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306

11 (9th Cir. 1991);  see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  The federal habeas

12 court determines sufficiency of the evidence in the context of the substantive elements of the

13 criminal offense, as defined by state law.  See Jackson, 443 U.S. at 324 n.16.

14 1.    Age of the Victim

15 Petitioner argues that the evidence was insufficient to establish that the victim was

16 six to eight years of age at the time of the offenses.  Under California Penal Code § 288(a) anyone

17 who willfully commits any lewd or lascivious act upon, or with the body of, a child under the age

18 of 14 years is guilty of a crime.  In this case, the evidence adduced at trial showed that petitioner

19 molested the victim until the victim was age 10 or 11.  Therefore, the evidence was sufficient to

20 allow the jury to conclude that petitioner committed the charged offenses while the victim was

21 under the age of 14.  The state court's denial of this claim is neither contrary to nor the result of an

22 

23 [4]    Even though Jackson was decided before AEDPA's effective date, this expression
of the law is valid under AEDPA's standard of federal habeas corpus review.  A state court
24 decision denying relief in the face of a record establishing that no rational jury could have found
proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable
25 application of the law as outlined in Jackson.  Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir.
2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of
26 review because a rational jury could make the finding at issue).

1  unreasonable application of clearly established federal law.

2              2.    Dates of the Offenses

3              Petitioner argues that the government failed to prove that the offenses occurred

4  between "December 29, 2000, and '2002.'"[5] In this case, the victim testified that he was born on

5  December 30, 1993.  On December 29, 1999, the victim was five years old, turning six the next

6  day, and on December 29, 2002, the victim was eight years old, turning nine the next day.  The

7  record also reflects that the victim's mother began dating petitioner's stepson when the victim

8  was six or seven years old, or sometime in 2000 or 2001.  Finally, the record reflects that the

9  molestation ended when the victim was ten or eleven, or sometime in 2003 or 2004.  From these

10  facts, viewed in the light most favorable to the prosecution, the jury could have reasonably

11  concluded that the molestation occurred between December 2000 and December 2002.  Therefore,

12  the state court's denial of this claim is neither contrary to nor the result of an unreasonable

13  application of federal law.

14              3.    Classification as Violence Sex Offender

15              Petitioner appears to argue that there was insufficient evidence to establish that he

16  is a "violent sexual offender."  This claim is without merit because, as the state court recognized

17  in the context of discussing petitioner's claims of ineffective assistance of counsel, the record

18  does not reflect that any such determination was made.

19      F.    **Challenge to California's Post-Conviction System**

20              Petitioner claims that California's post-conviction habeas procedures are

21  unconstitutional because counsel is never appointed, the courts don't issue orders to show cause,

22  discovery is not allowed, the courts don't hold evidentiary hearings, and testimony supporting a

23  petitioner's claim is never credited.  As respondent correctly notes, challenges to a state's post-

24  conviction review proceedings are not cognizable on federal habeas review.  See Franzen v.

25  _____

26        [5]        Elsewhere in his petition, petitioner correctly acknowledges that he was charged
        with offenses occurring between December 1999 and December 2002.

1 | Brinkman, 877 F.2d 26 (9th Cir. 1989); Cooper v. Neven, 641 F.3d 322 (9th Cir. 2011).

2 | **G.    Challenge to AEDPA**

3 | Petitioner argues that the limitations on habeas review imposed under AEDPA

4 | violate the Suspension Clause.  This argument is foreclosed by Crater v. Galaza, 491 F.3d 1119

5 | (9th Cir. 2007).

6 |

7 | **IV.  CONCLUSION**

8 | Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the

9 | court has considered whether to issue a certificate of appealability.  Before petitioner can appeal

10 | this decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c); Fed. R. App. P.

11 | 22(b).  Where the petition is denied on the merits, a certificate of appealability may issue under 28

12 | U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

13 | constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of

14 | appealability indicating which issues satisfy the required showing or must state the reasons why

15 | such a certificate should not issue.  See Fed. R. App. P. 22(b).  Where the petition is dismissed on

16 | procedural grounds, a certificate of appealability "should issue if the prisoner can show:  (1) 'that

17 | jurists of reason would find it debatable whether the district court was correct in its procedural

18 | ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid

19 | claim of the denial of a constitutional right.'"  Morris v. Woodford, 229 F.3d 775, 780 (9th Cir.

20 | 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)).  For the reasons

21 | set forth above, the court finds that issuance of a certificate of appealability is not warranted in

22 | this case.

23 | / / /

24 | / / /

25 | / / /

26 | / / /

Accordingly, IT IS HEREBY ORDERED that:

1.     Petitioner's amended petition for a writ of habeas corpus (Doc. 18) is denied;

2.     The court declines to issue a certificate of appealability; and

3.     The Clerk of the Court is directed to enter judgment and close this file.


DATED:  April 5, 2018

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE